*Court of Quarter Sessions, Dauphin County, March 13th, 1854.*

### IN RE JAMES GOWAN'S LICENSE.

The Court of Quarter Sessions may, in their discretion, revoke the license of a tavern-keeper, who sells liquor to minors or apprentices, harbors intemperate persons, or is convicted of selling liquor on Sunday, of any offence against the liquor laws or of one involving moral turpitude.   Where the barkeeper sold liquor to a minor without the knowledge of the inn-keeper, but did so on Sunday, when the house was kept open with his consent, his license should be revoked.

BY THE COURT.—A rule was granted on James Gowan to show cause why his license should not be revoked on account of violating the law in selling liquor to minors and apprentices;

[In re James Gowan's License.]

also for selling on Sunday, and harboring intemperate persons about his house. On the hearing it did not appear that he had suffered drunkenness to any considerable extent on his premises; but it was proved that he had sold liquor on Sunday to a minor, apprentice, and to several others. Two records of convictions are produced, the one by a justice of the peace for selling to said minor, apprentice, the other by a different magistrate for selling on Sunday; both of which offences were committed since the renewal of his license ·at the January Court. Two questions are presented by this evidence. 1st. Has the court the power to revoke this license? 2d. Is to revoke it a sound exercise of the discretionary power conferred by law? We do not possess an arbitrary authority over the licenses of public-house keepers. They hold them under the sanction of the law, when once granted, and cannot be deprived thereof except for certain legal reasons and causes, pretty clearly defined in the act of Assembly. When brought within the provisions of the act, it then, in some cases, becomes discretionary with the Court of Quarter Sessions to annul the license or permit it to remain in force. In other cases the law is imperative on the court to enter a revocation. By the 27th section of the act of March 11th, 1834, it is declared, " If any inn-keeper or tavern-keeper shall be *convicted of any offence* not mentioned in this act, or shall knowingly suffer drunkenness, riot, or other disorderly conduct in his house, *or shall disobey any of the provisions of this act,* it shall be lawful for the court which granted the license, *in their discretion,* to revoke the same, and such revocation shall be entered. on record, and the license shall thereupon cease and determine." The 21st section prohibits any tavern-keeper from harboring, entertaining or trusting any person under the age of twenty-one years, or any apprentice, knowing him to be such, or after being warned, etc., under a penalty for the first and second offences of three dollars, and for the third offence under one of fifteen dollars and forfeiture of his license, and being forever incapable of receiving a license to keep a public house within this commonwealth. By this section *entertaining* a minor or apprentice is treated as an offence, and punished by a penalty. According to all rules of construction it is therefore forbidden. Forfeiture of the license is not in terms imposed as a penalty in such cases, unless the offence is committed a third time, when it is absolutely forfeited, and the party rendered incapable of receiving another at any time. Has the court a *discretionary* power to declare it forfeited on the perpetration of the first offence? It is very clear that the legislature intended to convey some meaning by the expression, " disobey any of the provisions of this act," and conferring authority on the court to forfeit the license in the exercise of its *discretion.* Yet if we determine that the court possessed no such power for the first offence, there is but little

[In re James Gowan's License.]

left in the act for the words to operate upon. The prohibition against gambling, or inciting thereto, or furnishing drinks to those engaged therein, is punished by a specific fine and forfeiture of license for one year on the first conviction, and by being forever incapable of receiving a license on the second. In those cases there is no room for discretion; the forfeiture is absolute. Nor can we discover anything to which the words, "disobey any of the provisions of this act" can be applied, unless it may be to the mandate "to keep good entertainment for man and horse," and in that case a specific penalty is imposed. We are of opinion that where a landlord knowingly furnishes intoxicating drinks to a minor or apprentice, or permits any kind of gambling in his house, or incites or encourages it, or furnishes drink to those engaged in it, he has offended against the provisions of the act, whether convicted thereof, or not, and the court may in its discretion, under a view of all the circumstances, revoke the license. It is not *required* to do so; but the power is conferred. The absolute command to revoke is imposed on the several convictions under the act. The court there has no discretion. This appears to us to be the fair interpretation of the statute, and that its words will admit of no other. If this is assuming too much uncontrolled discretion over inn-keepers on the part of the court, the legislature can apply the correction by repealing that part of the law. We also consider that the statute should be liberally construed, so as to suppress the mischief to be apprehended from an uncontrolled power to sell intoxicating drinks to minors and apprentices. A landlord might, a first and second time, furnish to a minor of the most tender years the means of excessive intoxication, against the earnest remonstrance of his guardian or parent, without the possibility of a greater punishment being imposed than the penalty of three dollars, which may be inadequate to prevent the mischief to society. But when it is known that in addition the court may in its discretion revoke the license, the landlord will avoid doing the injury. Therefore we are of the opinion that the court, on the record of conviction being produced, and the proof made before us of the fact of sale to this minor apprentice, has the power to revoke the license. Mr. Gowan has also been convicted of violating the Sabbath by selling liquor at his bar on that day. This offence is not enumerated in the act under consideration. Does it come within the meaning of the expression "*convicted of any offence* not mentioned in this act?" The term convicted, according to the best lexicographers, means the determining or finding the party guilty of an offence, and is applied alike to convictions by a court, a jury, a justice of the peace, or of conscience. In the law dictionaries it is defined to be "a condemnation, or giving judgment against a defendant. It is generally applied to summary proceedings before a magistrate, where the party is con-

[In re James Gowan's License.]

victed and sentenced." It may be applied to every kind of con-
viction, and is so in common parlance; and to the ordinary ex-
pressions of mankind we should look quite as much as into our
law books, to ascertain the true meaning of an act of Assembly.
The word "offence" is defined by lexicographers to be "any
transgression of law, divine or human; a crime or sin." An offen-
der, "one who violates any law, divine or human; a criminal."
The law dictionaries declare that, "strictly an offence includes
crimes, misdemeanors, and lesser matters not indictable; and are
generally distinguishable from crimes and misdemeanors because
not indictable, but punishable summarily by the forfeiture of a
penalty." Chitty, in his work on General Practice, vol. i, 14,
says: "The term offence may be considered as having the same
meaning as crime or misdemeanor; but is usually by itself under-
stood to be a crime not indictable, but punishable summarily or
by the *forfeiture of a penalty.*"

Therefore we are of the opinion that whether this statute is
tested by common parlance or the language of the law, it confers
a power on the court to revoke the license of those tavern-keepers
who are convicted of an offence either by a justice of the peace or
a court of common law. But to bring the case within the inten-
tion of the lawmakers, such conviction must be of some violation
of duty or law *as a tavern-keeper,* or of a crime involving moral
turpitude. If a landlord was convicted of an assault and bat-
tery in a matter having no connection with his business, of cut-
ting timber trees, or of a nuisance in flooding his neighbor's land,
it would confer no power on the court to revoke his license. But
if found guilty of an assault with intent to rob, commit a rape,
or of larceny, perjury, forgery, or the like, it would be otherwise.
If summarily convicted of profane swearing or a breach of the
Sabbath, in a matter having no connection with his business as a
landlord, it would not give authority to the court over his license.
If the crime were committed by him as a tavern-keeper, and in
the exercise of his business as such, it would confer such power.
The mere *commission* of the offence of selling liquor on Sunday
will not give power to the court; it is not "an offence mentioned
in the act." The *conviction* of that crime brings it within the
letter and intention of the statute. We have not arrived at this
conclusion without hesitation. Not from any intrinsic difficulty
in the wording of the statute, but because we are aware that sev-
eral judges in this State, for whose opinion we have the highest
respect, have determined differently. The interest of the commu-
nity and the policy of the law require this interpretation of the
act. Were we to decide otherwise, the consequence will be, that
where a license is granted for a year, it must be continued, how-
ever much the neighborhood might be injured by the vending of
intoxicating drinks on Sunday. The fine of $4.00 may be fully

[In the matter of the Petition of Antes to vacate a Street in Harrisburg.]

remunerated by the profits of the sales; and a refusal to renew the license at the end of the year will leave but little terror to tenants, whose terms very frequently expire annually.   For those reasons, and many others which might be adduced, we are of the opinion, that when a landlord is *convicted* of selling liquors on Sunday, the court may revoke his license.   Is it a sound exercise of legal discretion to revoke the license in this case?   The sale to the minor apprentice appears to have been made by a barkeeper, when the landlord was not present; and for that act alone it might seem harsh to deprive him of his license.   But we must bear in mind that it took place on Sunday, when the bar was kept open under the express sanction of the landlord.   This act of itself was unlawful, and the party authorizing it must be answerable for all the consequences.   The sale on Sunday may have been at the same or different times; the presumption is that it was at a different time, as the barkeeper was the proper person to sue if the sale was in the absence of the owner.   We have only the conviction before us.   The constable who gave the information, testifies that the landlord was very abusive to him for informing; and declared that he had sold several times on that day; that others did, and he would also.   This court has repeatedly declared that such sales are illegal.   The Supreme Court of this State has settled the law in the same way.   We have given repeated warnings to tavern-keepers that their licenses would not be renewed if they lived in the weekly violation of the law. This landlord was not ignorant of his duty, and well knew that he was acting against the mandate of the law in selling on Sunday.   He was properly convicted by the justice from aught that appears before us; and we consider that we would be derelict to society should we permit the offence to be persisted in.   In the exercise of what we consider a sound legal discretion, we have resolved to revoke this license.   The court has exercised great liberality in conferring licenses on the keepers of public houses. At the same time we have declared our determination to hold the party licensed to a strict performance of his legal duties.   This determination we shall in every case most inflexibly carry into full effect.